The STATE of Texas and the Texas Parks and Wildlife Department, Petitioners,

v.

Ricky SHUMAKE and Sandra Shumake, Individually and as Personal Representative of the Estate of Kayla Shumake, Deceased, Respondents.

No. 04–0460.

Supreme Court of Texas.

Argued April 12, 2005.

Decided June 23, 2006.

Rehearing Denied Sept. 22, 2006.

Danica Lynn Milios, Greg Abbott, Attorney General, Barry Ross McBee, Edward D. Burbach, Rafael Edward Cruz, S. Ronald Keister, Office of the Attorney General, Austin, for petitioners.

Les Mendelsohn, Les Mendelsohn & Associates, P.C., Ricky J. Poole, Law Offices of Ricky J. Poole, San Antonio, for respondents.

Luis E. Fierros, Assistant City Attorney, Office of the City Attorney, Fort Worth, Houston, for Amicus Curiae City of Fort Worth.

Ramon G. Viada III, Abrams Scott & Bickley, L.L.P., Houston, for Amici Curiae Texas Municipal League and Texas City Attorneys' Association.

Justice MEDINA delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice O'NEILL, Justice GREEN, and Justice JOHNSON joined.

In this case we consider the effect of the recreational use statute on a premises liability claim against the state. TEX. CIV. PRAC. & REM. CODE §§ 75.001–.004. The Tort Claims Act waives the state's sovereign immunity for premises defects or injuries caused by "a condition or use of . . . real property." TEX. CIV. PRAC. & REM. CODE § 101.021. The State contends here, however, that the recreational use statute effectively reinstates immunity for premises liability claims arising on state-owned recreational properties. We disagree.

While the recreational use statute raises the burden of proof by classifying the recreational user of state-owned property as a trespasser and requiring proof of gross negligence, malicious intent, or bad faith, it does not reinstate sovereign immunity but rather immunizes the state only to the extent of the elevated standard. Although we do not agree in all respects with the court of appeals' opinion, we agree with its judgment and accordingly affirm. 131 S.W.3d 66.

I

Blanco State Park is a picnic, camping, and recreation area owned by the State of Texas and operated by the Texas Parks and Wildlife Department. During a family visit to the park, the Shumake's nine-year-old daughter, Kayla, drowned while swimming and tubing in the Blanco River. Kayla was allegedly sucked underwater by a powerful undertow and trapped in a man-made culvert that diverted the water under a nearby park road.

The Shumakes later learned that only days before Kayla's death three other park patrons had encountered the same undertow and nearly drowned due to the same conditions. These events were communicated to both a Parks Department employee and to the Austin office of the Parks Department.

The Shumakes sued the State of Texas, claiming, among other things, that the wrongful death of their daughter was caused by a special or premises defect. They asserted that when the river's waters were high, the culvert was concealed, creating a dangerous undertow. They further alleged that the Parks Department was aware of this dangerous situation, having received reports of other recent near-drownings involving the same area, but failed to make the culvert safer or warn of the danger. The Shumakes finally alleged

that the Parks Department's failure to act involved an extreme degree of risk, considering the probability and magnitude of the potential harm to swimmers and thus had breached even the modest duty of care owed to them as trespassers under the recreational use statute.

The Parks Department filed a plea to the jurisdiction, seeking dismissal of the Shumakes' claims for lack of subject matter jurisdiction, urging, among other things, that the recreational use statute barred their premises defect claims by eliminating the waiver of governmental immunity provided by the Tort Claims Act for such claims. *See* TEX. CIV. PRAC. & REM. CODE §§ 75.001–.004. The trial court denied the plea,[1] and the Parks Department took an interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

The court of appeals affirmed the trial court's denial of the plea to the jurisdiction,[2] concluding that the Shumakes had adequately pled a premises liability claim against the state within the Tort Claims Act's waiver and that the recreational use statute, although reducing the duty of care, did not otherwise affect that waiver. 131 S.W.3d at 73–81. The Parks Department now urges this Court to take jurisdiction of the interlocutory appeal because of a conflict of decisions among the courts of appeals concerning application of the recreational use statute.

## II

■ Before reaching the merits, we must consider the issue of our own jurisdiction. Generally, a court of appeals' decision in an interlocutory appeal is final. TEX. GOV'T CODE § 22.225(b)(3). When, however, a justice in the court of appeals dissents on a question of law material to the decision in the interlocutory appeal, or when a prior decision of another court of appeals conflicts with the court's decision in the interlocutory appeal, we have jurisdiction to resolve the disagreement or conflict. TEX. GOV'T CODE §§ 22.001(a)(1), (2) and 22.225(c).

The court of appeals' decision in this case conflicts with those of four other courts of appeals which have held that the recreational use statute does not permit a premises defect claim against the state. *See City of Fort Worth v. Crockett*, 142 S.W.3d 550 (Tex.App.—Fort Worth 2004, pet. denied); *Gray v. City of Galveston*, 2003 WL 22908145 (Tex.App.—Houston [14th Dist.] Dec.11, 2003, no pet.) (memo op.); *City of Lubbock v. Rule*, 68 S.W.3d 853 (Tex.App.—Amarillo 2002, no pet.); *Flye v. City of Waco*, 50 S.W.3d 645 (Tex. App.—Waco 2001, no pet.). Three other courts of appeals have concluded, as did the court of appeals in this case, that such claims are available under the statute. *West v. City of Crandall*, 139 S.W.3d 784 (Tex.App.—Dallas 2004, no pet.); *Tex. Parks & Wildlife Dep't v. Morris*, 129 S.W.3d 804 (Tex.App.—Corpus Christi 2004, no pet.); *City of Houston v. Cavazos*, 811 S.W.2d 231 (Tex.App.—Houston [14th Dist.] 1991, writ dism'd). We thus have

1. The trial court denied the plea to the jurisdiction, concluding that the Shumakes had adequately alleged a cause of action under the Tort Claims Act and that the recreational use statute was unconstitutional as applied to them. The trial court further concluded that the Shumakes had established a waiver of immunity for their alternative claims of nuisance and attractive nuisance.

2. The court of appeals disagreed with some of the trial court's reasons for denying the plea. The court of appeals concluded that the Shumakes had not established the state's waiver of immunity for claims of nuisance and attractive nuisance. 131 S.W.3d at 72–73. The court also concluded that the recreational use statute was not unconstitutional as applied to the Shumakes. *Id.* at 81.

jurisdiction to resolve the conflict in this interlocutory appeal. TEX. GOV'T CODE § 22.001(a)(2).

## III

■ Generally, the State of Texas has sovereign immunity from suit unless waived by the Legislature. *Gen. Servs. Comm'n v. Little–Tex Insulation Co.,* 39 S.W.3d 591, 594 (Tex.2001). We have construed that immunity to deprive the courts of subject matter jurisdiction over suits against the state or its subdivisions. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224 (Tex.2004). The Legislature, however, has provided a limited waiver of the state's immunity from suit for certain tort claims under the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE §§ 101.002, 101.021, 101.025.

The Texas Tort Claims Act includes, among other things, a limited waiver of the state's immunity from suits alleging personal injury or death caused by premises defects. *Id.* §§ 101.021(2), 101.022. It further provides that in premises defect cases, the state owes the claimant only the duty that a private person owes to a licensee on private property.[3] *Id.* § 101.022(a). When injury or death results on state-owned, recreational land, however, the recreational use statute limits the state's duty even further to that owed by a landowner to a trespasser. *Id.* § 75.002; *see also id.* §§ 75.003(g) ("To the extent that this chapter limits the liability of a governmental unit under circumstances in which the governmental unit would be liable under [the Tort Claims Act], this chapter controls."), 101.058 (same).

The Parks Department contends that by classifying the entrant and user of state-owned recreational property as a trespasser, the Legislature reinstated the immuni-ty for premises defect claims waived under the Tort Claims Act. The Department reasons that because a landowner generally has no duty to make its property safe for trespassers, or to warn them of dangerous conditions, it should follow that a trespasser cannot complain about such things. The court of appeals, however, disagreed.

The court concluded that neither the trespasser standard nor the recreational use statute operated to reinstate sovereign immunity for premises defect claims. 131 S.W.3d at 80. The court reasoned that a landowner might have a duty to warn of, or make safe, an unreasonably dangerous condition on its premises, if it were both aware of the condition and the trespassers presence on its property. In so doing, the court followed a distinction drawn in the *Restatement* between known and unknown or naked trespassers. 131 S.W.3d at 77–80 (citing RESTATEMENT (SECOND) OF TORTS §§ 335, 337).

The Department complains that the court of appeals' reliance on the *Restatement* has created new duties for landowners, not recognized at common law nor contemplated by the Legislature when it enacted the recreational use statute. The Department submits that the gross negligence standard, expressed both in the statute and as part of the limited duty of care owed to a trespasser, refers only to contemporaneous activities on the premises, and not to the condition of the premises. *See, e.g., City of Lubbock,* 68 S.W.3d at 859 (citing *Flye,* 50 S.W.3d at 648)(duty owed a trespasser "does not encompass injury arising from the condition of realty but only injury arising from the activity or conduct of the occupier"); *see also City of Fort Worth,* 142 S.W.3d at 554 (expressing

---

**3.** This classification does not apply if the claimant pays for the use of the premises or in cases of special defects. *See* TEX. CIV. PRAC. & REM. CODE § 101.022.

disagreement with the court of appeals' reasoning in *Shumake* ).

## IV

A negligent activity claim requires that the claimant's injury result from a contemporaneous activity itself rather than from a condition created on the premises by the activity; whereas a premises defect claim is based on the property itself being unsafe. *See Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex.1992). We have rejected attempts to blur the distinction between these two claims. *See id.* (declining "to eliminate all distinction between premises conditions and negligent activities"). The Park Department's argument here, however, does not seek so much to blur the distinction between the two as it does to eliminate one altogether. Determining whether a "trespasser" on state-owned recreational land has a claim for injuries caused by the unsafe condition of the property requires that we construe the statute along with the common law principles the statute ostensibly incorporates.

### A

When construing a statute, we begin with its language. Our primary objective is to determine the Legislature's intent which, when possible, we discern from the plain meaning of the words chosen. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex.2003). If the statute is clear and unambiguous, we must apply its words according to their common meaning without resort to rules of construction or extrinsic aids. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex.1999). We may consider other matters in ascertaining legislative intent, including the objective of the law, its history, and the consequences of a particular construction. *See* Tex. Govt Code § 311.023(1), (3), (5); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex.1994). Statutory construction is a question of law, and our review is accordingly de novo. *In re Forlenza*, 140 S.W.3d 373, 376 (Tex.2004).

The recreational use statute limits not only the liability of the state, but also the liability of others, who open their land for recreational purposes. Tex. Civ. Prac. & Rem. Code §§ 75.001–.004.[4] The protection is extended to encourage this type of use. The statute limits liability by providing that the owner or occupier of real property does not assure that the premises are safe for recreational purposes and does not assume responsibility for the actions of those admitted to the property. *Id.* § 75.002(c)(1), (3). The statute further creates a legal fiction, classifying the invited recreational user of the property as a trespasser, and imposing that limited standard of care upon the landowner. *Id.* § 75.002(c)(2). The statute, however, also provides that the recreational user's status as trespasser "shall not limit the liability of an owner, lessee, or occupant of real property who has been grossly negligent or has

---

4. The part of the statute relevant to this case provides:

> (c) If an owner, lessee, or occupant of real property other than agricultural land gives permission to another to enter the premises for recreation, the owner, lessee, or occupant, by giving the permission, does not:
> 1) assure that the premises are safe for that purpose;

> 2) owe to the person to whom permission is granted a greater degree of care than is owed to a trespasser on the premises; or
> 3) ...
> (d) Subsection ... (c) shall not limit the liability of an owner, lessee, or occupant of real property who has been grossly negligent or has acted with malicious intent or in bad faith.

Tex. Civ. Prac. & Rem. Code § 75.002(c), (d).

acted with malicious intent or in bad faith." *Id.* § 75.002(d).

On its face, section 75.002(d) makes no distinction between injuries caused by activities and injuries caused by conditions. The Department argues, however, that even though section 75.002(d) does not expressly limit the scope of a gross negligence claim, the limitation is nevertheless implicit in the classification of the recreational user as a trespasser under section 75.002(c)(2). The Department submits that gross negligence must arise, if at all, from contemporaneous activities on the property because a trespasser has no right to expect that the property is safe or that the owner will warn about any dangerous conditions known to it. As a general proposition this is correct, but construing trespasser status as an absolute bar to a premises defect claim under the statute requires closer examination.

## B

■ A trespasser at common law was one who entered upon property of another without any legal right or invitation, express or implied. *Texas–Louisiana Power Co. v. Webster*, 127 Tex. 126, 91 S.W.2d 302, 306 (1936). At common law, the landowner owed no duty but to refrain from injuring the trespasser "willfully, wantonly, or through gross negligence." *Tex. Utils. Elec. Co. v. Timmons*, 947 S.W.2d 191, 193 (Tex.1997); *Burton Constr. & Shipbuilding Co. v. Broussard*, 154 Tex. 50, 273 S.W.2d 598, 603 (1954). The rule is based on the principle that a landowner has no obligation to protect a trespasser in the wrongful use of the landowner's property: trespassers, who come uninvited for purposes of their own "must take the premises as they find them; and if they

fall into an unsuspected danger, the loss is their own." *Tex. Cities Gas Co. v. Dickens*, 140 Tex. 433, 168 S.W.2d 208, 210 (1943). Thus, as a general proposition, a landowner is entitled to the exclusive use of his property and "is not liable for injury to trespassers caused by his failure to exercise reasonable care to put his land in a safe condition for them, or to carry on his activities in a manner which does not endanger them." W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 58 at 393–94 (5th ed.1984).

This rule is grounded in the common law's traditional regard for the rights of private ownership of property and the assumption that landowners normally have no reason to expect trespassers or know about them, and thus no liability for creating a dangerous condition on their own property. *Id.* at 395. This general proposition is subject to a number of qualifications, however. *See id.* at 395–99 ("Once the foregoing general rule of nonliability has been stated, the rest of the law of trespassers is a list of exceptions to it.").

A number of jurisdictions, motivated by more pressing considerations for human safety, have balanced such considerations against the traditional rule favoring property rights. As one authority has observed, if the landowner's "burden is very slight, and if the risk of harm to trespassers is correspondingly very great, there may be good reason to hold the defendant liable." *Id.* at 395. Under this exception to the general rule, a landowner, who has actual knowledge that a trespasser is coming and will encounter a known dangerous condition created by the landowner, may owe a duty to warn or take some other action for the trespasser's protection.[5]

---

**5.** *See, e.g., Copeland v. Pike Liberal Arts*, 553 So.2d 100, 102 (Ala.1989) (duty owed to trespasser is "not to wantonly or intentionally injure him and to warn him of dangers known by [landowner] *after* it was aware of danger to [trespasser]"); *Parzych v. Branford*, 20 Conn.

This is also the *Restatement*'s position, adopted here by the court of appeals. 131 S.W.3d at 77–78.

The Parks Department argues, however, that before this case Texas law had not recognized such a distinction, and thus the principle could not have been contemplated by the Legislature when it enacted this statute. But whether Texas common law has, or should, distinguish between different types of trespassers does not control our decision in this statutory construction case. Neither this distinction nor any other disagreement about the common law's treatment of trespassers is controlling here because the Legislature did not purport to adopt these common law principles as its liability standard in section 75.002(d). In fact, it intended something else entirely.

Section 75.002(d) quite plainly provides that the classification of a recreational user as a trespasser was not intended to "limit the liability of [a landowner] who has been grossly negligent or has acted with mali-

Supp. 378, 136 A.2d 223, 225 (1957) ("[I]n Connecticut a landowner is not liable to a trespasser for failure to use care to safeguard him from injury due to conditions on the land. However, when the presence of a trespasser becomes known, a duty to use ordinary care to avoid injury then arises."); *Wood v. Camp*, 284 So.2d 691, 693, 694 (Fla.1973) ("The unwavering rule as to a trespasser is that the property owner is under the duty only to avoid willful and wanton harm to him and upon discovery of his presence to warn him of known dangers not open to ordinary observation."); *Bremer v. Lake Erie & W.R. Co.*, 318 Ill. 11, 148 N.E. 862, 864 (1925) ("The distinction is clearly made that a defendant owes the duty of ordinary care to a trespasser known to be in danger, to avoid injuring him. If by the exercise of ordinary care injury can be avoided, the defendant is liable for the failure to use such care, but to a trespasser, whose presence or whose danger is unknown, there is no duty to exercise ordinary care, though there is a duty not to injure him willfully or wantonly, or by such gross negligence as evidences willfulness."); *Reasoner v. Chicago, Rock Island & Pac. R.R. Co.*, 251 Iowa 506, 101 N.W.2d 739, 741 (1960) ("It is uniformly stated that the owner or holder of the premises owes no duty to the unknown trespasser upon his property save that of not injuring him willfully or wantonly, and to use such reasonable and ordinary care as the circumstances demand, *after his presence on the premises and his peril are known, to avoid injuring him.*"); *Louisville & Nashville R.R. Co. v. Vanderpool*, 496 S.W.2d 349, 351 (Ky. 1973) ("[T]he only duty one owes a trespasser (as was Vanderpool) is to exercise ordinary care to avoid injuring him after his position of peril is discovered."); *Pridgen v. Boston Housing Authority*, 364 Mass. 696, 308 N.E.2d 467,

474 (1974) ("[A]lthough an owner or occupier of land owes a trespasser only the duty to refrain from wilful, wanton or reckless conduct, where a trespasser is in a position of peril or in a helpless situation and his presence becomes known, the owner then has a duty to use reasonable care to avoid injuring him, or, as sometimes stated, a duty of reasonable care in the circumstances."); *Hanson v. Bailey*, 249 Minn. 495, 83 N.W.2d 252, 257 (1957) (Sections 333 and 335 of the Restatement of Torts "correctly enunciate the applicable law"); *Imre v. Riegel Paper Corp.*, 24 N.J. 438, 132 A.2d 505, 508 (1957) ("The standard of duty is the protection of others against an unreasonable risk of harm; and the principle is operative in favor of trespassers on land if the presence of the particular trespasser be discovered, or the possessor of the land be aware of constant trespassing upon a particular place or a limited area and the act is likely to cause death or serious bodily harm."); *Maple v. Tennessee Gas Transmission Co.*, 201 N.E.2d 299, 300 (Ohio Ct.App.1963) ("The duty not to injure a trespasser after he is known to be upon the premises is the same duty as is owed in that respect to an invitee."); *Lavallee v. Pratt*, 122 Vt. 90, 166 A.2d 195, 198 (1960) ("The fact that the plaintiff was a trespasser will not excuse the actor from the duty of reasonable care for his safety if his presence was known or should reasonably have been anticipated."); *Brown v. Carvill*, 206 W.Va. 605, 527 S.E.2d 149, 153–54 (1998) ("We have held that when a landowner creates a dangerous condition upon his property that is likely to cause serious bodily injury or death, and the landowner is aware that trespassers intrude into the area where the dangerous condition exists, that the landowner must then exercise due care towards the trespassers.").

cious intent or in bad faith." TEX. CIV. PRAC. & REM. CODE § 75.002(d). Had the Legislature merely intended to adopt the trespasser standard, this limitation would not have been necessary. The standard of section 75.002(d) and the trespasser standard are therefore not the same.

This is immediately apparent when the language of subsection (d) is compared to that consistently used by Texas courts to describe the common law duty of care owed to trespassers: to refrain from injuring the trespasser "willfully, wantonly or through gross negligence." *Tex. Dept. of Parks & Wildlife*, 133 S.W.3d at 225; *City of Bellmead v. Torres*, 89 S.W.3d 611, 613 (Tex.2002); *Tex. Util. Elec. Co.*, 947 S.W.2d at 193; *Burton Constr. & Shipbuilding Co.*, 273 S.W.2d at 603. While the statute and the common law both share a gross negligence component, construing them to mean the same thing in each context would render subsection (d)'s reference to gross negligence redundant. In construing a statute, we give effect to all its words and, if possible, do not treat any statutory language as mere surplusage. *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 402 (Tex.2000). Thus, the Department's argument concerning the limitations inherent in gross negligence under the trespasser standard, subsection (c) of the statute, does not inform our understanding of subsection (d).

The recreational use statute does not define gross negligence; it merely provides that trespasser status shall not limit the liability of a landowner "who has been grossly negligent." TEX. CIV. PRAC. & REM. CODE § 75.002(d). This language does not suggest that the Legislature was only concerned about a landowner's contemporaneous and active conduct as the Department has argued. Nothing in the language indicates that the Legislature intended that

gross negligence should have such a special or limited meaning. Because it is not defined otherwise, we conclude that the Legislature must have intended for gross negligence to have its commonly-accepted legal meaning.

Both this Court and the Texas Legislature have defined gross negligence as an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 21 (Tex. 1994); *Missouri Pac. Ry. Co. v. Shuford*, 72 Tex. 165, 10 S.W. 408, 411 (1888); TEX. CIV. PRAC. & REM. CODE § 41.001(11). And we have previously applied this definition to the recreational use statute. *See Miranda*, 133 S.W.3d at 225 (governmental unit waives sovereign immunity under statute only if it is grossly negligent). Because gross negligence may result from acts or omissions, and section 75.002(d) does not distinguish between injuries caused by conditions and activities, we conclude that section 75.002(d) permits a premises defect claim for gross negligence.

V

Recreational use statutes have been enacted in nearly every state and uniformly provide that landowners do not extend to recreational users any assurance that the property is safe, nor confer upon the recreational user the legal status of an invitee or licensee to whom an ordinary duty of care is owed. *See* 62 AM. JUR.2D *Premises Liability* § 118 (1990). These statutes, however, also generally retain liability for a willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity. *Id.* at 479. Because these statutes generally immunize landowners from liability unless they are guilty of gross negligence, willful or malicious conduct, it is important to under-

stand under what conditions a failure to guard or warn against a dangerous condition may be considered grossly negligent, malicious or willful.

 Contrary to the Dissent's suggestion, we do not hold, or even imply, that a landowner may be grossly negligent for failing to warn of the inherent dangers of nature. 199 S.W.3d at 290 (Brister, J. dissenting) (suggesting that State must now warn that "it is dangerous for a nine-year-old child to go tubing in a rushing river during high water"). A landowner has no duty to warn or protect trespassers from obvious defects or conditions. Thus, the owner may assume that the recreational user needs no warning to appreciate the dangers of natural conditions, such as a sheer cliff, a rushing river, or even a concealed rattlesnake. But a landowner can be liable for gross negligence in creating a condition that a recreational user would not reasonably expect to encounter on the property in the course of the permitted use. *See, e.g., Golding v. Ashley Cen. Irrigation Co.*, 902 P.2d 142, 145 (Utah 1995) ("If [ ] a landowner has knowledge of an uncommon, hidden peril or danger on the land that is not inherent in the use to which the land is put and that would not be reasonably discovered or avoided by a trespasser, the landowner's failure to warn or guard against such a danger could amount to willful, wanton, or malicious inaction."); *City of Houston v. Cavazos*, 811 S.W.2d 231 (Tex.App.-Houston [14th Dist.] 1991, writ dism'd) (knowledge that numerous people had drowned over a period of years at the same artificially created, but hidden, hazard without any action by city to warn or remedy the hazard was some evidence of gross negligence); *see also Burnett v. City of Adrian*, 414 Mich. 448, 326 N.W.2d 810 (1982) (reaching same conclusion under Michigan's recreational use statute); *cf. Smither v. Tex. Utilities*

*Elec. Co.*, 824 S.W.2d 693, 696 (Tex.App.-El Paso 1992, writ dism'd) (landowner's use of signs warning of dangerous waters created by company's discharge canal demonstrated conscious concern of landowner "for the safety even of trespassers"). Gross negligence requires that the landowner be subjectively aware of, and consciously indifferent to, an extreme risk of harm. *See* Tex. Civ. Prac. & Rem. Code § 41.001(11); *Louisiana–Pacific Corp. v. Andrade*, 19 S.W.3d 245, 246–47 (Tex.1999) ("what separates ordinary negligence from gross negligence is the defendant's state of mind; in other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care"). This is consistent with our approach in *Texas Department of Parks and Wildlife v. Miranda* that a premises defect claim might be brought under the recreational use statute as long as there existed a factual dispute regarding the landowner's gross negligence with respect to the alleged defect. 133 S.W.3d at 230–31. The recreational use statute limits the state's liability for premises defects, but its effect is not to reinstate the state's immunity from suit.

\* \* \*

We conclude that the Shumakes' pleadings were sufficient to state a premises liability claim under the recreational use statute. The judgment of the court of appeals is accordingly affirmed.

Justice WAINWRIGHT filed a concurrence.

Justice BRISTER filed a dissent.

Justice WILLET did not participate.

Justice WAINWRIGHT, concurring.

This case is relatively straightforward. The question is whether the plaintiffs pled facts sufficient to constitute a claim for

gross negligence against the Texas Department of Parks and Wildlife. If so, they satisfied the pleading requirements for a limited waiver of sovereign immunity created by the Legislature under the recreational use statute.

Kayla Shumake and her parents were swimming and tubing at Blanco State Park when an undertow pulled Kayla underneath the water into a culvert where she drowned. The Shumakes pled that the Department constructed and maintained a drainage culvert under a park road that created a dangerous and hidden undertow in an apparently popular swimming area when the level of the Blanco River was elevated. The Shumakes pled that the Department knew that, only days before Kayla Shumake drowned, one or more persons had nearly drowned at the same site from the same risk. The Shumakes also pled that the Department knew of the continuing risk yet failed to warn of the undertow in the swimming area. The Shumakes pled that they did not know of the undertow and could not have known of the danger in the exercise of ordinary care. Thus, the Shumakes alleged facts to support their contention that (1) viewed objectively from the Department's standpoint, its failure to warn involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and (2) the Department had actual, subjective knowledge of the risk involved but nevertheless acted with conscious indifference to the safety of the guests swimming in the park. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225 (Tex.2004); *City of Bellmead v. Torres*, 89 S.W.3d 611, 613 (Tex.2002).

Under the recreational use statute and the Texas Tort Claims Act, the Legislature waives sovereign immunity if the Department is grossly negligent. TEX. CIV. PRAC. & REM. CODE §§ 75.002(c)-(d), 101.058.

That holding is a bridge we crossed in *Miranda*, relying on the common law gross negligence standard. 133 S.W.2d at 225. I agree with the Court that the Shumakes pled a claim for gross negligence and satisfied the Legislature's requirements for a limited waiver of liability for their lawsuit against the Department. I do not concur in any broader view of the limited waiver in the recreational use statute.

The dissent suggests that the Court's conclusion defies common knowledge: "[n]o one needs to be warned that it is dangerous for a nine-year-old child to go tubing in a rushing river during high water." 199 S.W.3d 279, 290. If the Department presented evidence that the danger was obvious by virtue of observable "rushing" water flowing through the swimming area, the result in this case might be different. But the Shumakes' pleadings contain no such reference and the Department presents no assertions or evidence to controvert the Shumakes' allegation that they had no knowledge of the undertow. The dissent also criticizes the Court's result as imprudent, commenting that "[n]ature is not safe. In many instances, that is its beauty. We can make a river safer by removing every rock and posting warning signs every 50 feet, but it is no longer a river—it is a waterpark. We can make a bridge safer by creating higher and longer spans, but only at some cost in both dollars and scenic beauty." *Id.* No one would doubt the truth of these statements. But surely the dissent would concede that the Legislature knew these elementary facts about parks and rivers when it passed the recreational use statute. In fact, the Legislature is in a superior position to determine the conditions and dangers of the State's parks, as well as the Department's ability to warn of perils or make them safe. From this position of greater knowledge, the Legislature made its decision and

drafted the recreational use statute as a limited waiver of the State's sovereign immunity. Even if we disagreed with the Legislature's assessment of parkland risks, we are bound by the Legislature's choice and should not displace it with our own.

I concur in the Court's judgment.

Justice BRISTER, dissenting.

No one needs to be warned that it is dangerous for a nine-year-old child to go tubing in a rushing river during high water. Because the Court holds the State must do so or pay the consequences, I respectfully dissent.

Nature is not safe. In many instances, that is its beauty. We can make a river safer by removing every rock and posting warning signs every 50 feet, but it is no longer a river—it is a waterpark. We can make a bridge safer by creating higher and longer spans, but only at some cost in both dollars and scenic beauty.

The Recreational Use Statute favors leaving things as they are, but encouraging people to enjoy them nonetheless. The unstated but unavoidable cost of this choice is that some users will be seriously injured, and some even killed, as Kayla Shumake was. But the statute does not make an exception for serious injury or death; indeed, the potential liability in precisely those cases is what tempts landowners to keep the State's scenic beauty to themselves. The only exception the statute makes is for willful or wanton acts or gross negligence. *See* TEX. CIV. PRAC. & REM CODE § 75.002(a).

Here, the Shumakes alleged the State knew "one or more persons had almost drowned because of the undertow at or near the same spot where Kayla Shumake drowned," and was grossly negligent because it "failed to block swimmer's [sic] even though it knew that swimmers were subject to being sucked under the water into the culvert." This presents the stark choice: if one person "almost drowns" at a beach, lake, or swimming hole, must the State block swimmers in the future so it never happens again? I would hold the State cannot be grossly negligent in refusing to do so.

The Court says the State need not warn of or make safe natural conditions like a rushing river, but must do so here because it created a condition that recreational users would not expect to encounter. But those who tube in Texas rivers (unlike the Court) frequently encounter low-water crossings and culverts, often obstructed by debris, and must know that floating into such a hazard can be very dangerous. Further, because such rivers tend to be swift (few tube in ponds), visitors must reasonably expect to encounter strong currents that can pin a boat, canoe, or swimmer against any number of natural and artificial obstacles.

JUSTICE WAINWRIGHT skirts the statutory limitations by saying the State did not prove the river was rushing or that the Shumakes knew about undertow at this particular spot. But the unreasonably dangerous condition the Shumakes alleged was "the powerful flow of the elevated water level"; that they did not anticipate the details of what might occur does not mean the danger was not obvious. *See Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 388 (Tex.1991). Because the statute says nothing about what dangers are obvious (merely incorporating our own common law of trespass), we cannot blame the Legislature for making us decide this was not an obvious danger.

The people of Texas face a choice with respect to wild lands: we can leave them like they are and trust visitors to use reasonable caution, or we can flatten them

and fill them with signs for the safety of those few who might not. The Recreational Use Statute favors the former. Because today's decision does not, I respectfully dissent.