

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-21-00078-CV

———————————————————

CITY OF ARLINGTON, Appellant

V.

MONIQUE UKPONG, Appellee

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-315819-20

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Appellee Monique Ukpong was injured when a dead tree fell on her while she was jogging on a trail in River Legacy Park, a park owned and controlled by appellant the City of Arlington. Ukpong brought a premises-liability action against the City seeking "monetary relief over $1 million." The City filed a plea to the jurisdiction, arguing that it was immune from Ukpong's lawsuit because it did not owe a duty to warn or protect her from the dead tree, a natural condition on the City's property, and also arguing that even if it did owe Ukpong such a duty, the trial court lacked jurisdiction to consider Ukpong's claims for any amount over $250,000. The trial court denied the City's plea to the jurisdiction, and in two issues on appeal, the City argues that the trial court erred. We will reverse the trial court's denial of the City's plea to the jurisdiction and render judgment dismissing Ukpong's claims.

### II. BACKGROUND

River Legacy Park covers 1,300 acres in Arlington. Within the park, a 7.5-mile concrete trail winds through forested areas. On January 21, 2020, Ukpong went running on the park's trail, as she had done "many times before." That day, while she was running on the trail, a dead hackberry tree next to the trail fell on her, causing her injury. Ukpong filed a lawsuit against the City alleging premises liability. Two photos of the downed tree were included with Ukpong's petition. They show the downed tree lying across the running trail, and one of the photos shows the tree-filled area

surrounding the running trail. In her petition, Ukpong alleged that the City had waived its immunity under the Tort Claims Act and the Recreational Use Statute because her injuries were caused by the City's gross negligence.

The City answered and filed a plea to the jurisdiction. Citing *State v. Shumake*, 199 S.W.3d 279 (Tex. 2006), and *City of Waco v. Kirwan*, 298 S.W.3d 618 (Tex. 2009), the City argued that it did not have a duty to warn or protect Ukpong, a recreational user, from the dead tree, a natural condition on its property. The City argued that because it owed no duty to Ukpong, it retained its governmental immunity from suit, and thus, the trial court lacked subject-matter jurisdiction. The City also argued that even if the trial court had jurisdiction over the suit, its jurisdiction was limited to $250,000 in damages under the Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.023(c).

In response, Ukpong argued that the City should have been aware of the danger posed by the dead tree.[1] Ukpong attached to her response deposition testimony from Martin Sanchez, a park supervisor for the City, who stated that park employees regularly inspected the trail, that they cut down dead trees standing next to the trail, and that a dead tree leaning toward the trail presents a dangerous condition. Ukpong also attached to her response a declaration from her expert arborist, John

---

[1]In response to the City's argument that the trial court's jurisdiction was limited to $250,000 in damages, Ukpong simply stipulated, "Under the Texas Tort Claims Act, the City's liability in this case is capped at $250,000."

3

Tomlinson. When discussing the dead tree and whether it created an obviously dangerous condition, Tomlinson stated,

> It is my professional opinion that this tree failed and fell onto the trail due to the weakness that occurred as a result of the decay fungi decomposing the integrity of the wood, and the lean of the tree. The tree had been dead for several years. It would have been obvious for several years to anyone looking at the trees along the trail that the tree was dead. . . . The location of the tree was such that a person on the trail who was looking at the trees along the trail would have seen it because of its close proximity to the trail and the fact that there were no bushes or anything else between the tree and the trail that would have obstructed the view of the tree by a person on the trail. It would have also been obvious to anyone who looked at the tree from the trail that, because of its size, its short distance from the trail, and the fact it was leaning toward the trail, it would eventually fall onto the trail.

Following a hearing, the trial court denied the City's plea to the jurisdiction. This interlocutory appeal ensued. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (allowing interlocutory appeal from an order denying a plea to the jurisdiction by a governmental unit).

### III. DISCUSSION

In its first issue, the City argues that it did not owe Ukpong a duty to warn or protect her from the dead tree, a natural condition, and that, therefore, the trial court erred by denying the City's plea to the jurisdiction.

### A. Standard of Review

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). A plea to the jurisdiction may be utilized to challenge whether the plaintiff has met

4

her burden of alleging jurisdictional facts or to challenge the existence of jurisdictional facts. *See Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). Whether a trial court has subject-matter jurisdiction is a question of law. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). We therefore review a trial court's ruling on a plea to the jurisdiction de novo. *Id.*

In deciding a plea to the jurisdiction, a court may not weigh the merits of a plaintiff's case but must consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554–55 (Tex. 2000). When considering a trial court's order on a plea to the jurisdiction, we construe the pleadings in the plaintiff's favor and look to the plaintiff's intent. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012); *Brown*, 80 S.W.3d at 555. A court must grant the plea to the jurisdiction if the plaintiff's pleadings or undisputed evidence affirmatively negates the existence of jurisdiction. *Heckman*, 369 S.W.3d at 150; *Miranda*, 133 S.W.3d at 227.

## B. The Law

Sovereign immunity deprives a trial court of jurisdiction for lawsuits in which the State has been sued unless the State consents to the suit. *Miranda*, 133 S.W.3d at 224. Political subdivisions of the State, including cities, are entitled to such immunity—referred to as "governmental immunity"—unless it has been waived.

5

*Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003).

Under the Tort Claims Act, the Legislature has provided a limited waiver of governmental immunity from suit for certain tort claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.025. Governmental entities are liable under the Tort Claims Act for "personal injury . . . caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id.* § 101.021(2). The Tort Claims Act also provides that "if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises," in which case the duty owed is that owed to an invitee. *Id.* § 101.022(a); *Tex. S. Univ. v. Gilford*, 277 S.W.3d 65, 69–70 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

When property is open to the public for "recreation," however, the Recreational Use Statute further limits a governmental unit's duty by classifying recreational users as akin to trespassers and by limiting the governmental unit's liability for premises defects to claims involving gross negligence, malicious intent, or bad faith.[2] Tex. Civ. Prac. & Rem. Code Ann. § 75.002. As used in the Recreational Use Statute, "gross negligence" has both an objective and a subjective component:

[2]Ukpong does not allege that the City acted maliciously or in bad faith; rather, Ukpong alleges only that the City was grossly negligent.

6

(1) viewed objectively from the standpoint of the actor at the time of its occurrence, the act or omission involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others. *Suarez v. City of Tex. City*, 465 S.W.3d 623, 633 (Tex. 2015). And, as with negligence actions, "a defendant may be liable for gross negligence only to the extent that it owed the plaintiff a legal duty." *Kirwan*, 298 S.W.3d at 623.

In *Shumake*, the Texas Supreme Court considered the effect of the Recreational Use Statute in a premises-liability claim involving the death of the Shumakes' nine-year-old daughter, who had drowned while swimming and tubing in the Blanco River. 199 S.W.3d at 281. The Shumakes had alleged that their daughter was "sucked underwater by a powerful undertow and trapped in a man-made culvert that diverted the water under a nearby park road," and they further alleged that when the Blanco River's water was high, the man-made culvert was concealed, creating a dangerous undertow that the Texas Parks and Wildlife Department knew about. *Id.* In analyzing whether the Department owed their daughter a duty to warn or protect her from this dangerous condition, the Texas Supreme Court stated that "[a] landowner has no duty to warn or protect trespassers from obvious defects or conditions." *Id.* at 288. Thus, a property owner "may assume that the recreational user needs no warning to appreciate the dangers of natural conditions, such as a sheer cliff, a rushing river, or

7

even a concealed rattlesnake." *Id.* The court noted, however, that "a landowner can be liable for gross negligence in creating a condition that a recreational user would not reasonably expect to encounter on the property in the course of the permitted use." *Id.* With that legal framework in mind, the court concluded that the Shumakes' pleadings sufficiently stated a premises-liability claim under the Recreational Use Statute. *Id.* In making that conclusion, the court reiterated, "[W]e do not hold, or even imply, that a landowner may be grossly negligent for failing to warn of the inherent dangers of nature." *Id.*

In *Kirwan*, the Texas Supreme Court considered a premises-liability claim involving the death of a man who was sitting on top of a naturally occurring cliff in Cameron Park when the "solid rock ground collapsed underneath him, causing him to fall approximately sixty feet to his death." 298 S.W.3d at 620. At the outset of its analysis, the court noted that its facts differed from those in *Shumake* because while "[t]he condition in *Shumake* was not a naturally occurring one," the cliff at issue in *Kirwan* was a natural condition. *Id.* at 622. The court further explained that while in *Shumake* it had provided examples of "open and obvious conditions which happen to be naturally occurring," the condition in *Kirwan*, while natural, was not open and obvious. *Id.* The court was thus called to address "whether a duty arises with respect to natural conditions, whether they be open and obvious or not." *Id.* at 623. In considering this question of duty, the court stated,

8

Nature is full of risks and it is certainly foreseeable that human interaction with nature may lead to injuries and possibly even death. Our state parks and lands are covered by numerous potentially dangerous natural conditions: cliffs; caves; waterfalls; swamps and other wetlands; mountains and canyons; surf; and various animals and creatures. Landowners likely know of the types of animals and natural formations on their property, and will no doubt, as a general rule, foresee the risks which will accompany human interaction with these natural conditions. Reasonable recreational users who choose to visit a property for recreational purposes will also have, or in the very least should have, awareness of the inherent risks involved in interacting with nature. Therefore, the risks inherent in a natural condition will ordinarily be foreseeable not only to the landowner but to the recreational user as well. This is especially true where a natural condition is of the sort one would reasonably expect to find on a property.

A cliff, like the one here, is the sort of dangerous natural condition that both a landowner and recreational user could foresee would pose a risk.

*Id.* at 624 (citations omitted).

The court next considered the public-policy implications of imposing a duty to warn or protect recreational users from natural conditions. *Id.* at 625–26. The court stated that "[i]t is generally unreasonable and unduly burdensome to ask a landowner to seek out every naturally occurring condition that might be dangerous and then warn of the condition or make it safe." *Id.* at 625. The court noted that "[i]n most circumstances, the magnitude of the burden in requiring a landowner to make perfectly safe, or post signs warning of, every potentially dangerous naturally occurring condition on his property would be immense" and that "the magnitude of this sort of burden will generally outweigh the foreseeability of the risk of harm where the condition is naturally occurring." *Id.* at 625–26. Bearing that in mind, the court

9

held that "a landowner, lessee, or occupant, under the [R]ecreational [U]se [S]tatute, does not generally owe a duty to others to protect or warn against the dangers of natural conditions on the land, and therefore may not ordinarily be held to have been grossly negligent for failing to have done so." *Id.* at 626. The court thus held that the City of Waco did not owe a duty to warn or protect the man who fell from the dangers of the naturally occurring cliff. *Id.* at 628. The court went on to note that even assuming that a duty was owed, the City of Waco was not grossly negligent under the facts of the case. *Id.* at 627–28.

## C. Application of the Law to the Facts

Here, the parties agree that the City owned and operated River Legacy Park at the time of Ukpong's injury and that she was a recreational user of the park at that time. Therefore, the City did not owe Ukpong a duty to protect her from obvious defects or conditions and generally did not owe a duty to warn or protect her from the dangers of natural conditions in the park, whether obvious or not. *See Kirwan*, 298 S.W.3d at 626; *Shumake*, 199 S.W.3d at 288.[3]

---

[3]In her brief, Ukpong argues that *Miranda*, rather than *Shumake* and *Kirwan*, "contains the proper analysis for the decision of this case." *Miranda* is distinguishable for several reasons. First, and as noted by the Texas Supreme Court in *Kirwan*, the court "did not directly address the duty question in *Miranda*." *Kirwan*, 298 S.W.3d at 626 (citing *Miranda*, 133 S.W.3d at 221). Here, our analysis turns on whether the City owed a duty to warn or protect Ukpong from the dead tree. Second, in *Miranda*, the plaintiffs asked a park ranger to recommend a safe campsite, and after the plaintiffs stood in the recommended campsite, a falling tree branch struck one of them. 133 S.W.3d at 221. The Texas Supreme Court evaluated whether pleading those specific facts was sufficient to state a claim for gross negligence for which immunity

10

As a preliminary matter, we note that both Ukpong's pleadings and evidence establish that the dead tree was an obvious condition. Ukpong's petition states that the dead tree "had large areas of missing bark, countless insect bore holes, various types of fungus growing on it, no branches or leaves, and no canopy, all of which are clear and obvious signs that the tree was dead." And Ukpong's expert arborist, Tomlinson, averred that "[i]t would have been obvious for several years to anyone looking at the trees along the trail that the tree was dead" and that "[i]t would have also been obvious to anyone who looked at the tree from the trail that, because of its size, its short distance from the trail, and the fact it was leaning toward the trail, it would eventually fall onto the trail." Thus, under *Shumake*, the City had no duty to warn Ukpong of the dead tree because it was an obvious condition.[4] *See* 199 S.W.3d at 288.

---

was waived. *Id.* at 230. Here, there is nothing in the record to indicate that the City made any affirmative representation that Ukpong would be safe while running on the trail. And, in any event, we would only need to weigh such evidence of the City's gross negligence if the City owed Ukpong a duty. *See Kirwan*, 298 S.W.3d at 620 ("But if the law imposes no duty upon the landowner with respect to the allegedly dangerous condition, then this burden of proof does not come into play."). Third, in *Miranda*, only a plurality of the Texas Supreme Court joined in the portion of the opinion holding that the plaintiffs had alleged sufficient facts for a gross-negligence claim under the Recreational Use Statute. *Id.* at 626–27 (citing *Miranda*, 133 S.W.3d at 220, 229–31).

[4]Without citing any portion of the record, Ukpong maintains that "[t]he dead tree in this case would not have been obvious to a trail-runner." Apart from belying the evidence from her own expert, we do not think that a recreational user should be owed some additional duty merely because she fails to appreciate the obvious conditions in her surroundings. *See Kirwan*, 298 S.W.3d at 624 ("Reasonable

Even if the dead tree was not an obvious condition, it was a natural condition,[5] and thus, under *Kirwan*, the City generally did not owe a duty to warn or protect her from it. *See Kirwan*, 298 S.W.3d at 626. In attempting to get around *Kirwan*, Ukpong emphasizes that the City allegedly knew or should have known about the dangers of the dead tree. But, as noted in *Kirwan*, "[n]ature is full of risks and it is certainly foreseeable that human interaction with nature may lead to injuries and possibly even death," and "[o]ur state parks and lands are covered by numerous potentially dangerous natural conditions . . . ." *Id.* at 624. Like the cliff in *Kirwan*, the dead tree here "is the sort of dangerous natural condition that both a landowner and recreational user could foresee would pose a risk," and just as the Texas Supreme Court held that the City of Waco did not owe a duty to warn or protect recreational users from the cliff, we hold that the City did not owe a duty to warn or protect Ukpong from the dead tree that fell on her.[6] *Id.* at 624, 628.

---

recreational users who choose to visit a property for recreational purposes will also have, or in the very least should have, awareness of the inherent risks involved in interacting with nature.").

[5]In her responses to the City's requests for admission, Ukpong admitted that the tree was not "artificial" and that the "existence and presence" of the tree "occurred naturally." The fact that the dead tree was a natural condition can also be seen in Tomlinson's declaration, which describes "white rot wood fungi" in the dead tree and which states that "[t]his can be thought of a[s] nature's way of recycling waste." Moreover, Sanchez, a park supervisor for the City, testified that "[o]bviously, trees are naturally occurring in a forest."

[6]In her brief, Ukpong argues that by inspecting the trail and by cutting down dead trees that presented potential hazards, the City assumed the duty to do those

12

Moreover, even if the City did owe Ukpong a duty, and even if we assume that the City knew of an "extreme degree of risk" posed by the dead tree, we fail to see how the City showed "conscious indifference to the rights, safety, or welfare of others" that would be required for a finding of gross negligence. *See Suarez*, 465 S.W.3d at 627; *see also Kirwan*, 298 S.W.3d at 627 ("Even assuming that the City owed McGehee a duty . . . we fail to see how the City showed 'conscious indifference to the rights, safety, or welfare of others.'").

---

tasks with ordinary care and was negligent in its performance of those tasks. Ukpong cites several cases to support her proposition. *See Nall v. Plunkett*, 404 S.W.3d 552 (Tex. 2013); *Torrington Co. v. Stutzman*, 46 S.W.3d 829 (Tex. 2000); *Wilson v. Tex. Parks and Wildlife Dep't*, 8 S.W.3d 634 (Tex. 1999); *Osuna v. S. Pac. R.R.*, 641 S.W.2d 229 (Tex. 1982); *Fox v. Dall. Hotel Co.*, 240 S.W. 517 (Tex. 1922), *overruled on other grounds by Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 925 (Tex. 1981); *Little v. Delta Steel, Inc.*, 409 S.W.3d 704 (Tex. App.—Fort Worth 2013, no pet.). Those cases are easily distinguishable because none of them involved the Recreational Use Statute—a statute placing limits on the duties owed by a governmental unit to a recreational user. Moreover, five of the six cases cited by Ukpong did not involve an injury stemming from a natural condition on government property. *See Nall*, 404 S.W.3d at 554 (involving an injury caused by a vehicle); *Torrington Co.*, 46 S.W.3d at 833 (involving an injury caused by a helicopter crash); *Osuna*, 641 S.W.2d at 229 (involving an injury caused by a collision between a vehicle and a train); *Fox*, 240 S.W. at 518 (involving an injury caused by an elevator); *Little*, 409 S.W.3d at 706 (involving an injury cased by a steel plate dislodging from a crane). The one case that did involve an injury from a natural condition on government property, *Wilson*, is distinguishable because in that case—a case involving two brothers who drowned on a flooded stretch of the Pedernales River—the plaintiffs contended that "by putting up signs about its flood warning systems, the Department encouraged visitors' reliance that the park rangers were monitoring the river and would provide adequate warning if dangerous conditions developed." 8 S.W.3d at 635–36. Here, Ukpong's complaint is the opposite—she complains that the City did not warn her to be on the lookout for falling trees.

13

Having determined that the City did not owe a duty to warn or protect Ukpong from the dead tree because it was an obvious condition and because it was a natural condition—and having determined that even assuming the City did owe a duty to Ukpong, the City was not grossly negligent—we hold that the pleadings and evidence do not rise to the necessary level to waive the City's immunity from liability. Accordingly, the trial court erred by denying the City's plea to the jurisdiction. We sustain the City's first issue.[7]

## IV. CONCLUSION

Having sustained the City's first issue and needing not reach its second issue, we reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing Ukpong's claims.

/s/ Dana Womack

Dana Womack
Justice

Delivered: October 14, 2021

---

[7]Because we sustain the City's first issue, we need not reach the City's second issue that argued that even if the trial court did have subject-matter jurisdiction over Ukpong's claims, it lacked jurisdiction to consider Ukpong's claims for any amount over $250,000. *See* Tex. R. App. P. 47.1.