COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
 RODERICK SANCHEZ, DIRECTOR, PLANNING AND DEVELOPMENT
 SERVICES DEPARTMENT, CITY OF SAN ANTONIO, AND PLANNING AND DEVELOPMENT
 SERVICES DEPARTMENT, CITY OF SAN ANTONIO, 
 
 
 §
  
 §
  
 §
  
 §
 
 
  
  
  
  
  
  
 No. 08-10-00200-CV
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
 Appellants,
 
 
 §
 
 
 Appeal from the
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
 v. 
 
 
 §
 
 
 131st District
 Court
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
 §
 
 
 of Bexar County,
 Texas
 
 
 
 
 BOARD OF ADJUSTMENT FOR THE CITY OF SAN ANTONIO AND
 SAROSH MANAGEMENT, L.L.C. A/K/A ZRS MANAGEMENT, INC.,
 
 
  
 §
  
 §
  
 
 
  
 (TC# 2009-CI-17593)
 
 
 
 
  
 
 
 §
 
 
  
 
 
 
 
 Appellees.
 
 
  
 
 
  
 
 


 

                                                                  O
P I N I O N

 

Roderick Sanchez, the Director of Planning and Development Services
Department of the City of San Antonio, and the Planning and Development
Services Department of the City of San Antonio[1]
appeal from an order granting a plea to the jurisdiction filed by Sarosh
Management, L.L.C. a/k/a ZRS Management, Inc. (Sarosh).  We sustain the sole issue for review and
reverse and remand.

FACTUAL SUMMARY

            On April 27, 2009, Sarosh applied
for a certificate of occupancy for a convenience store, A-Z Food Mart, in San
Antonio and indicated on the application that alcohol sales would be made at
the location.  It is undisputed that the
convenience store is located less than 300 feet from an elementary school
located in the East Central Independent School District (ECISD).  In determining the store’s distance from the
elementary school, the building inspector mistakenly measured from the door of
the convenience store to the door of the school rather than measuring the
distance between the respective property lines. 
Consequently, the building inspector recommended that the certificate of
occupancy be issued.  The Planning
Department subsequently became aware of the building inspector’s error and on
August 12, 2009, it revoked Sarosh’s certificate of occupancy because the
convenience store was selling beer within 300 feet of an elementary
school.  Sarosh appealed and, on October 5,
2009, the Board of Adjustment, by a 9-2 vote, reversed the decision revoking the
certificate of occupancy.  On October 19,
2009, the Board of Adjustment approved the minutes of the October 5 meeting and
filed the minutes in the Board of Adjustment offices.  

On October 28, 2009, the Planning Department filed suit in the 131st District
Court of Bexar County appealing the Board of Adjustment’s decision.  See
Tex.Local Gov’t Code Ann. § 211.011
(West 2008).  On that same date, ECISD
filed suit in the 224th District Court of Bexar County seeking judicial review
of the Board of Adjustment’s decision.[2]  Sarosh filed a plea to the jurisdiction in
each case asserting that the district court lacked jurisdiction of the suits
because they were not filed within ten days after the date the decision was
filed in the Board of Adjustment’s office as required by Section 211.011(b) of
the Texas Local Government Code. 
Following an evidentiary hearing, the district court granted Sarosh’s
plea to the jurisdiction in each case.  The
Planning Department and ECISD filed notices of appeal in their respective cases.

JURISDICTION

            In its sole issue, the Planning
Department argues that the district court erred by granting the plea to the
jurisdiction.  The Planning Department
asserts that the Board of Adjustment’s decision was not filed for purposes of
Section 211.011(b) of the Texas Local Government Code until October 19, 2009
when the Board adopted the minutes and filed them in its office, and therefore,
the Planning Department timely perfected its appeal on October 28, 2009.

Standard of Review

A plea to the jurisdiction is a dilatory plea by which a party challenges
the court’s authority to determine the subject matter of the action.  Harris
County v. Sykes, 136 S.W.3d 635, 638 (Tex. 2004); Bland Independent School District v. Blue, 34 S.W.3d 547, 554 (Tex.
2000).  The plaintiff bears the burden to
allege facts affirmatively proving that the trial court has subject matter
jurisdiction.  Texas Department of Criminal Justice v. Miller, 51 S.W.3d 583, 587
(Tex. 2001).  Whether a party has alleged
facts that affirmatively demonstrate a trial court’s subject matter
jurisdiction and whether undisputed evidence of jurisdictional facts
establishes a trial court’s jurisdiction are questions of law which we review de novo.  Texas
Department of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004);
Texas Natural Resource Conservation
Commission v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002).  

When a plea to the jurisdiction challenges the
existence of jurisdictional facts, the trial court must review the relevant
evidence to determine whether a fact issue exists.  Miranda,
133 S.W.3d at 226.  When reviewing a
trial court’s ruling on a challenge to its jurisdiction, we consider the
plaintiff’s pleadings and factual assertions, as well as any evidence in the
record that is relevant to the jurisdictional issue.  City of
Elsa v. Gonzalez, 325 S.W.3d 622, 625 (Tex. 2010); Bland ISD, 34 S.W.3d at 555.  If the evidence creates a fact question
regarding the jurisdictional issue, then the trial court cannot grant the plea,
and the issue must be resolved by the trier of fact.  Miranda,
133 S.W.3d at 227-28; see City of Elsa,
325 S.W.3d at 626.  On the other hand, if
the evidence is undisputed or fails to raise a fact question, the trial court
must rule on the plea as a matter of law.  Miranda,
133 S.W.3d at 228.

Judicial Review Pursuant to Section 211.011

In the case below, the Planning Department sought judicial review of the
Board of Adjustment’s decision reversing the Planning Department’s revocation
of the certificate of occupancy.  Under Section
211.011, an officer, department, board, or bureau of the municipality may
present to a district court a verified petition stating that the decision of
the board is illegal is whole or in part and specifying the grounds of the
illegality.  Tex.Local Gov’t Code Ann. § 211.011(a)(3).  Under subsection (b), the “petition must be
presented within 10 days after the date the decision is filed in the board’s
office.”  Tex.Local Gov’t Code Ann. § 211.011(b).  This requirement is jurisdictional.  See
Tellez v. City of Socorro, 226 S.W.3d 413, 414 (Tex. 2007).  Although the statute speaks in terms of the
petition being presented, jurisdiction exists once a party files a petition
within ten days after the board’s decision.  Id.

The Board of Adjustment

            The City of San Antonio has
established a board of adjustment comprised of eleven members appointed for a
term of two years.  See Tex.Local Gov’t Code
Ann. § 211.008(a) (providing that the governing body of a municipality
may provide for the appointment of a board of adjustment).  According to Article II of the Board of
Adjustment’s Articles of Rules and Procedures, the Board elects a Chair and a
Vice-Chair from its membership by majority vote.[3]  The Director of the Planning and Development
Services Department, or a designated representative, serves as Executive
Secretary of the Board.  Pursuant to
Article VI, all meetings and hearings of the Board are subject to the Texas
Public Information Act and any action calling for a formal vote shall take
place only at a public meeting or hearing. 
Article VI, Section G addresses the relationship between the Board and
the Planning Department:  

Staff of the
City of San Antonio Planning and Development Services Department, herein
referred to as ‘Staff’, shall conduct all official correspondence of the Board;
send out all official notices required by law; keep records of each examination
or other official action of the Board and perform all other duties required by
law and these Rules and Procedures.  

 

With respect
to the Board’s minutes, Article VI, Section I provides that “[t]he Board, through
its Secretary, shall keep minutes of all meetings that indicate the vote of
each member on every question on which it is required to act, or the fact that
a member is absent.”  The Rules
additionally require that the minutes be filed in the Office of the Planning
and Development Services Department.  Finally,
the Rules and Procedures provide that approval of the minutes is part of the
usual order of business in a meeting of the Board.  

The Evidence

In support of its position that the Board’s decision was filed on October
19, 2009, the Planning Department relied on the affidavit of Rudy Niño, Jr., a Planning
Supervisor in the Planning and Development Services Department.  Niño
averred that he was familiar with the policies, procedures, and practices of
the Planning Department as they relate to the Board of Adjustment.  Following a meeting of the Board of
Adjustment, the staff prepares the minutes to reflect the Board’s decisions and
those minutes are “voted on and approved at a subsequent Board meeting.”  Niño
further stated that:  “Decisions of the
Board are generally not filed until some time after the Board meeting where the
initial vote is conducted.”  In this
particular case, the minutes were approved and the Board’s decision was filed
on October 19, 2009.  

At the hearing on the plea to the jurisdiction, Sarosh introduced the
depositions of Sandra Ann Gonzalez, an administrative assistant employed by the
City of San Antonio, and Niňo.  Gonzalez’s duties include performing
administrative work related to the Board of Adjustment.  Gonzalez attends the Board of Adjustment
meetings and creates an electronic audio recording of the meeting.  Sometime after the October 5, 2009 meeting,
Gonzalez transferred the digital audio recording onto a CD which is normally retained
for ninety days before it is destroyed.  Gonzalez’s
duties also included transcribing the minutes of the meeting by listening to
the audio recording.[4]  Within one week after the October 5 meeting,
Gonzalez transcribed the minutes using a laptop at work and saved the document on
her laptop.  On October 19, 2009, the
Board of Adjustment approved the minutes of the October 5, 2009 meeting.  Gonzalez posted the minutes online after they
were approved by the Board so they could be viewed by the public.  She testified that if a member of the public
called after a meeting but prior to approval of the minutes, she would inform
the person of the Board’s decision made at the meeting.  

Niño’s duties
include supervising planners who write recommendations regarding variance cases
that go before the Board of Adjustment and attending the Board’s meetings to
provide information or answer questions. 
After the October 5, 2009 meeting, Niño sent a letter to counsel for Sarosh informing him
that the Board of Adjustment had voted to overturn the decision of the Planning
Department revoking the certificate of occupancy.  Niño
advised counsel that:  “A summary[5]
of the actions taken by the Board of Adjustment, including the results of your
request, will be filed in the Planning and Development Services Department on
October 19, 2009.”  The letter was not
dated, but Niño
testified that it would have been sent sometime after October 5 but before the
approval of the minutes on October 19.  There
is no evidence that Niño’s
letter was filed in the Board’s office.  Like
Gonzalez, Niño
testified that if someone called the Planning Department requesting information
about the Board’s vote after the October 5 meeting, he would have informed them
of the Board’ decision.  

Sarosh also introduced into evidence: 
(1) a copy of the minutes reflecting they were approved by the Board of
Adjustment’s chairman, Michael Gallagher, on October 19, 2009 and attested to
by the Board’s executive secretary[6]
on October 21, 2009; and (2) the court reporter’s transcription of the October
5, 2009 meeting.  

The Parties’ Arguments

The Planning Department argues that Section 211.011(b) contemplates that
a written document be filed in the Board of Adjustment’s Office.  It reasons that the timetable under Section
211.011(b) began running on October 19, 2009 when the Board of Adjustment
approved the written minutes and filed them in the Board’s offices.  The Board of Adjustment takes the opposite
view and responds that it is not required to keep or approve minutes but
instead is permitted to file its decision in electronic form.  The Board maintains that its staff created
two electronic records of the Board’s decision: 
(1) the audio recording of the October 5, 2009 meeting which included
the Board’s final decision; and (2) the minutes transcribed by Gonzalez on a
computer prior to October 19, 2009 and maintained in the custody of the
Board.  Sarosh likewise argues that Section
211.011(b)’s timetable began running on October 5, 2009 when the Board made its
decision and Gonzalez created the electronic recording of the Board
meeting.  These arguments raise a question
regarding the meaning of the statute.

Rules of Statutory Construction

            Statutory construction is a legal
question that we review de novo to
ascertain and give effect to the Legislature’s intent.  F.F.P.
Operating Partners., L.P. v. Duenez, 237 S.W.3d 680, 683 (Tex. 2007).  When construing a statute, we begin with its
language.  State v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006). We must
interpret the statute according to the plain meaning of the language used, and
must read the statute as a whole without giving effect to certain provisions at
the expense of others.  City of San Antonio v. City of Boerne,
111 S.W.3d 22, 25 (Tex. 2003).  Each
word, phrase, or expression must be read as if it were deliberately chosen, and
we will presume that words excluded from a provision were excluded for a
purpose.  Gables Realty Ltd. Partnership v. Travis Central Appraisal District,
81 S.W.3d 869, 873 (Tex.App.--Austin 2002, pet. denied).  We may consider other matters in ascertaining
legislative intent, including the objective of the law, its history, and the
consequences of a particular construction.  See Tex.Gov’t Code Ann. § 311.023(1), (3),
(5)(West 2005); Shumake, 199 S.W.3d
at 284.

Meaning of the Term “Decision” Under § 211.011(b)

            Section 211.011(b) requires that a
party file its petition “within 10 days after the date the decision is filed in
the board’s office.”  Tex.Local Gov’t Code Ann. § 211.011(b).  Significantly, the statute does not provide
that the appellate timetable begins running from the date the decision is made by the board of adjustment, but
rather from the date the decision is filed
in the board’s office.  The statute does
not define “decision” nor does it expressly require that the decision be a
written one.  Nevertheless, Section
211.011(b) contemplates that some kind of physical record of the decision will
be made and filed in the board office.  The
meaning of the term “decision” is better understood when examined in light of
Section 211.008(f) which provides that:

The board shall
keep minutes of its proceedings that indicate the vote of each member on each
question or the fact that a member is absent or fails to vote.  The board shall keep records of its
examinations and other official actions. 
The minutes and records shall be
filed immediately in the board’s office and are public records.  [Emphasis added].

 

Tex.Local Gov’t Code Ann. §
211.008(f).

            Minutes are a permanent record of
what action was taken at a meeting, not a record of what was said.  Robert’s
Rules of Order Newly Revised p. 468 (11th ed. 2011).[7]  Consistent with parliamentary procedure, a
board of adjustment’s decision, as reflected by the vote of each member on a
particular question, must be recorded in the board’s minutes and those minutes
must be filed in the board’s office.  Tex.Local Gov’t Code Ann. § 211.008(f);
see also Tex.Gov’t Code Ann. § 551.021(b)(West 2004)(requiring that
the minutes (1) state the subject of each deliberation; and (2) indicate each
vote, order, decision, or other action taken). 
Section 211.008(f)’s additional requirement that the board keep a record
of its examinations is a means of creating a record of what was said at the
meeting.  

            Citing Section 551.021 of the Texas
Open Meetings Act, the Board of Adjustment argues that it is not required to
keep minutes, but has the option to instead make a tape recording of its
meetings.  The Board of Adjustment
reasons that the audio recording of its proceedings constitutes its “decision”
for purposes of Section 211.011(b).  The
Texas Open Meetings Act requires a governmental body[8]
to prepare and keep minutes or make a tape recording of each open meeting.  See
Tex.Gov’t Code Ann. § 551.021
(West 2004).  In this case, the Board of
Adjustment did both.  The Board of
Adjustment’s argument that it is not required to keep minutes not only ignores
Section 211.008(f)’s mandate that it do so but is contrary to its own Rules and
Procedures.[9]

            In attempting to ascertain what the Legislature
intended by use of the term “decision” in Section 211.011(b), we believe it is
important to consider the legislative history. 
The Legislature enacted the predecessor statute, Article 1011g, in
1927.  Acts 1927, R.S., 40th Leg., ch.
283, § 7, 1927 Tex.Gen.Laws
424.  Article 1011g § 7 contained the
requirements of both Sections 211.008(f) and 211.011(b) in the same section and
in substantially the same language.[10]
 At the time of Article 1011g’s
enactment, the keeping of minutes was the accepted means for the decisions of a
board or other assembly to be recorded and preserved, and that is a recognized use
of minutes in our current society.  The
Board of Adjustment suggests that keeping minutes is an antiquated and outdated
concept, but we note that the statute has remained unchanged for more than
eighty years.  Given that the Legislature
has required since 1927 that a board of adjustment file in its office minutes
which record its vote on a particular question, we believe the Legislature’s
use of the term “decision” in Section 211.011(b) refers to the decision
recorded in the board’s minutes and subsequently filed in the Board’s office.

Our conclusion is supported by consideration of the consequences of
holding that the Legislature intended the term “decision” to refer to an
electronic recording of the meeting.  A
party who wishes to appeal should be able to readily determine when a board of
adjustment’s decision has been filed in the board’s office so it can timely
file its petition pursuant to Section 211.011(b).  This is easily done when, as in this case,
the board of adjustment approves its minutes, files them in its office, and
posts them online for public access. 
According to counsel for ECISD, he contacted the Board of Adjustment to
determine the filing date and was advised that the decision would be filed in
the Board’s office on October 19 when the minutes were approved and filed.  Were we to hold that the board’s decision is
the CD created by an employee from the electronic recording of the board’s
meeting, a party who wished to appeal would not be able to readily determine
when that recording has been created or when it is considered by the board of
adjustment to have been filed in its office because there is no requirement
that notice be given to the parties.  After
reading Sections 211.008(f) and 211.011(b) together and considering the history
of the statute and the consequences of the possible constructions, we conclude that
the term “decision” means the board of adjustment’s minutes reflecting a vote
on a particular question and the records related to that decision. 

Approval of the Minutes

We turn now to address whether the Board’s decision was filed for
purposes of Section 211.011(b) when Gonzalez transcribed the minutes and stored
them on the hard drive of her laptop computer as a pdf file.  Citing Hall
v. Board of Adjustment of City of McAllen, 239 S.W.2d 647 (Tex.Civ.App.--San
Antonio 1951, no writ), the Board of Adjustment argues that its decision can be
filed before the minutes are approved. 
In Hall, the board of
adjustment did not have a regularly elected secretary, but an individual named
Patterson customarily acted as the secretary. 
At the meeting in question, Patterson wrote the minutes in longhand on
yellow paper and placed them in the minute book.  The following day, the minutes were typed
into the minute book kept in the office of the building inspector for the City
of McAllen.  A certified copy of the
minutes introduced into evidence bore the signatures of the chairman and board
members, and was attested by the secretary. 
The minutes did not reflect the date the minutes had been approved by
the board.  Hall and the other appellants
did not file their petition until twenty-five days after the minutes were typed
into the minute book.

The San Antonio Court of Appeals held that the appellate timetable began
running, not when the board approved the minutes, but when the minutes were
“prepared by the proper officer” and typed into the minute book.  Hall,
239 S.W.2d at 649.  We agree with the analysis in Hall, but the instant case is
distinguishable.  Simply put, there is no
evidence here that the executive secretary, or a designated representative,
ever typed the minutes into a minute book or took some action indicating that
the minutes had been approved and filed in the Board’s office.  Gonzalez’s preparation of the minutes for
approval by the Board at a subsequent meeting and storing the pdf file on the
hard drive of her laptop is not the functional equivalent of typing the minutes
into the minute book.

The Board of Adjustment additionally relies on Reynolds v. Haws, 741 S.W.2d 582, 586-87 (Tex.App.--Fort Worth
1987, writ denied).  In that case, the
board of adjustment filed in its office a written document which summarized the
board’s decision.  Almost a month later,
the board filed its minutes.  The court
of appeals determined that the summary filed in the board’s office constituted
the decision of the board for purposes of triggering the appellate timetable
under the predecessor to Section 211.011(b). 
The instant case is factually distinguishable because the Board of
Adjustment did not file a summary of its decision at any time. 

The Board of Adjustment additionally argues that there is no longer a
requirement that the minutes be approved but it cites no authority for that
statement and it did not offer any evidence in support of that assertion.  Approval of the minutes by the assembly or by
the secretary in accordance with the assembly’s procedures is a
well-established requirement of parliamentary procedure.  See
Robert’s Rules of Order Newly Revised p. 469 (11th ed. 2011).[11]  In contrast with the argument it makes on
appeal, the Board’s own Articles of Rules and Procedures requires that the
Board of Adjustment approve its minutes at a subsequent meeting as evidenced by
the signature of the Chairman or Vice-Chair as attested to by the Executive
Secretary.  The evidence reflects that
the Board followed that procedure in this case. 
Gonzalez’s testimony is clear that she does not post the minutes online
for public access until after the minutes have been formally approved by the
Board.  It is apparent that the Board’s
procedures require approval of the minutes before the minutes are treated by
the Board as a public record of its decision. 
From this evidence we conclude that the minutes are not filed in the
Board’s office for purposes of Section 211.011(b) until the minutes have been
approved.  Consequently, we decline to
find that Gonzalez’s storage of the unapproved draft on her laptop constituted
filing of the Board’s decision for purposes of Section 211.011(b).

The record before us establishes that the Board filed its approved
minutes on October 19, 2009. 
Consequently, the Planning Department timely filed its petition on
October 28, 2009.  The trial court erred
by granting the plea to the jurisdiction. 
We sustain the sole issue presented on appeal, reverse the order
granting the plea to the jurisdiction, and remand the cause to the district
court. 

 

 

February 22, 2012                               ________________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.











[1]  The opinion will refer to Appellants
collectively as the Planning Department.





[2]  The suit was filed in cause number
2009-CI-17596 and is styled East Central
Independent School District v. Board of Adjustment for the City of San Antonio
and Sarosh Management, L.L.C. d/b/a A-Z Food Mart.  





[3]  The Articles of Rules and Procedures of the
Board of Adjustment (revised April 2009) are available online on the official
website of the City of San Antonio, Development Services Department, Zoning
Section.





[4]  At the hearing on the plea to the
jurisdiction, Sarosh’s counsel stated that Gonzalez “presse[d] a button” and
created a seventy-three page transcription of the entire October 5
meeting.  Counsel argued that this
transcription was filed in the Board’s office when it was prepared by Gonzalez.  The transcription, however, was prepared by a
certified court reporter, Lindi S. Roberts, and Gonzalez made clear in her
deposition that she had not prepared the seventy-three page transcription, and
in fact, had never seen it before.  The
record does not reflect when the court reporter prepared the transcription of
the meeting or whether it was ever filed in the Board’s office.

 





[5]  In his deposition, Niňo referred to the
minutes as a “summary” of the Board’s actions.

 





[6]  The executive secretary’s signature is
illegible, but it can be ascertained that it is not Gonzalez’s signature.





[7]  Article VII, Section C of the Articles of
Rules and Procedures of the City of San Antonio’s Board of Adjustment
specifically provides:  “Any question
regarding parliamentary procedure not covered by these rules shall be decided
according to the latest edition of Robert’s Rules of Order.”

 





[8]  The Texas Open
Meetings Act defines “governmental body” as “a deliberative body that has
rulemaking or quasi-judicial power and that is classified as a department,
agency, or political subdivision of a county or municipality.”  Tex.
Gov’t Code Ann. § 551.001(3)(D)(West Pamph. 2011).  

 





[9]  The Board of Adjustment does not argue that
there is a conflict between Section 211.008(f) of the Local Government Code and
Section 551.021 of the Government Code.

 





[10]  Article 1011g, § 7 provided, in relevant
part, that:  “The board shall keep
minutes of its proceedings, showing the vote of each member upon each question,
or, if absent or failing to vote, indicating such fact, and shall keep records
of its examinations and other official actions, all of which shall be
immediately filed in the offices of the board and shall be a public
record.”  Acts 1927, R.S., 40th Leg., ch.
283, § 7, 1927 Tex.Gen.Laws
424.  Six paragraphs later, the statute
provided:  “Any person or persons,
jointly or severally, aggrieved by any decision of the board of adjustment, or
any taxpayer, or any officer, department, board, or bureau of the municipality,
may present to a court of record a petition, duly verified, setting forth that
such decision is illegal, in whole or in part, specifying the grounds of the
illegality.  Such petition shall be
presented to the court within 10 days after the filing of the decision in the
office of the board.”  Id.





[11]  Black’s Law
Dictionary gives the following definition of “minutes” based on parliamentary procedure:  The formal record of a deliberative
assembly’s proceedings, approved (as corrected, if necessary) by the assembly.  Black’s
Law Dictionary 1087 (9th ed. 2009).