**Opinion issued December 17, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00387-CV

————————————

**AC INTERESTS, L.P., FORMERLY AMERICAN COATINGS, L.P,**
**Appellant**

**V.**

**TEXAS COMMISSION ON ENVIRONMENTAL QUALITY, Appellee**

---

**On Appeal from the 345th District Court**
**Travis County, Texas**
**Trial Court Case No. D-1-GN-14-005160[1]**

---

[1] The Texas Supreme Court transferred this appeal from the Third Court of Appeals in Austin to this Court, as a routine docket-equalization matter. *See* TEX. GOV'T CODE § 73.001. We are unaware of any conflict between the Third Court's precedent and our own. *See* TEX. R. APP. P. 41.3.

## MEMORANDUM OPINION

The dispute in this case arises from the air-emission-credits program established by the Texas Commission on Environmental Equality (the "TCEQ").[2] The purpose of the voluntary program "is to allow the owner or operator of a facility . . . to generate emission credits by reducing emissions beyond the level required by any applicable local, state, or federal requirement," which the facility owner or operator then may use in accordance with the program rules.[3]

Appellant AC Interests, L.P., formerly American Coatings, L.P. ("AC Interests"), applied to the TCEQ for emission credits. After the TCEQ denied the application, AC Interests sought judicial review but its appeal of the decision to the district court was dismissed under Texas Rule of Civil Procedure 91a for lack of proper statutory service. The Texas Supreme Court reversed and remanded.[4]

On remand, the TCEQ filed a plea to the jurisdiction, arguing the case became moot when any emission credits AC Interests might have generated at its facility expired and, thus, any judgment rendered by a court will be without any practical legal effect. The district court granted the plea to the jurisdiction, and AC Interests appealed the dismissal order.

---

[2]     *See* 30 TEX. ADMIN. CODE §§ 101.300–.311.

[3]     *See id.* § 101.301.

[4]     *AC Interests, L.P. v. Tex. Comm'n on Envtl. Quality*, 543 S.W.3d 703 (Tex. 2018).

In this appeal, AC Interests contends (1) the mootness doctrine does not apply, (2) the TCEQ's denial of emission credits is an unconstitutional taking, and (3) it is entitled to a jury trial.

Based on the record and arguments presented to us, we conclude the controversy is moot and affirm.

## Background

The TCEQ administers the Texas Clean Air Act, which establishes a regulatory framework to "safeguard the state's air resources from pollution."[5] As part of the Act's implementation and to incentivize the voluntary reduction of emissions, the TCEQ has adopted rules authorizing it to grant emission credits, including emission reduction credits ("ERCs").[6] An ERC is a "certified emission reduction . . . that is created by eliminating future emissions and quantified during or before the period in which emission reductions are made from a facility."[7] They do not constitute a property right; rather, they are a limited authorization to emit

---

[5] *See* TEX. HEALTH & SAFETY CODE § 382.002(a); *see also id.* § 382.011(a)(1).

[6] *See* 30 TEX. ADMIN. CODE §§ 101.300–.304.

[7] *Id.* § 101.300(10).

3

pollutants.[8] And the TCEQ retains authority to "terminate or limit such authorization."[9]

One way a company may generate emission credits is by permanently shutting down a facility that lawfully emits certain pollutants.[10] The emission reduction must be certified, meaning the reduction must be "enforceable, permanent, quantifiable, real, and surplus."[11] If the TCEQ certifies the reduction, the facility owner or operator may use, trade, sell, or bank the emission credit for later use.[12]

Under this regulatory framework, AC Interests asked the TCEQ to certify ERCs purportedly generated at an AC Interests facility that had ceased emissions. But the TCEQ denied the application, prompting AC Interests to timely file a petition for judicial review in December 2014.[13]

The petition alleged that the AC Interests facility was destroyed by fire in July 2010. Although it obtained a permit to reconstruct the facility from the TCEQ in May 2013, AC Interests ultimately decided against rebuilding. Instead, AC Interests

---

[8] *See id.* § 101.302(k).

[9] *See id.*

[10] *See id.* §§ 101.302(a)(1), .303(a)(1)(A).

[11] *See id.* § 101.302(d)(1)(A).

[12] *See generally id.* §§ 101.306(a), .309(d).

[13] A person "affected by" a TCEQ decision may appeal by filing a petition in a Travis County district court. TEX. HEALTH & SAFETY CODE § 382.032(a).

4

applied for certification of ERCs in October 2013—and then revised its application three times between November 2013 and July 2014—based on a permanent-shutdown emissions reduction strategy.[14] The TCEQ denied the certification of ERCs, stating in its decision letter that AC Interests had provided "contradictory emissions information" and that the TCEQ could not determine that the emissions reduction was "quantifiable and real" or "surplus."

According to AC Interests, the TCEQ's refusal to certify ERCs violated "statutory provisions, exceeded [TCEQ's] statutory authority, and was arbitrary and capricious." AC Interests requested in its petition that, among other things, the district court: (1) set aside the TCEQ's decision; (2) remand to the TCEQ for further administrative proceedings on AC Interests's application for ERC certification; and (3) order that the "TCEQ issue an Emission Banking Credit and Allowance Certificate to AC Interests," along with costs, attorney's fees, and all other relief to which AC Interests was entitled.

The district court initially dismissed AC Interests's appeal in March 2015 because AC Interests did not timely serve the TCEQ with the petition for judicial

---

[14] The regulatory framework for emission credit applications provides that an application may be revised upon written notice from TCEQ of its denial. *See id.* § 101.302(f)(3).

5

review. But the Texas Supreme Court reversed and remanded, concluding that the late service did not require dismissal.[15]

On remand, the TCEQ again sought dismissal through a plea to the jurisdiction. The TCEQ asserted for the first time that the appeal was moot because any ERCs that could have been certified expired 60 months after the date of the emissions reduction at AC Interests's facility. By the TCEQ's calculation, any ERC that AC Interest might have generated expired 60 months after the facility shut down, which was either the date of the facility fire, in July 2010, or the date AC Interests decided not to reconstruct the facility, in October 2013.[16]

In other words, according to the TCEQ, a live controversy ceased to exist between the parties on July 31, 2015, during the prior appeal, or, at the latest, by October 2018, and thus any decision by the district court would be without "a practical legal effect on the alleged controversy related to [the] TCEQ's denial of AC Interests's ERC application." The district court granted the TCEQ's plea to the jurisdiction.

---

[15]   *AC Interests, L.P.*, 543 S.W.3d 714–15.

[16]   The TCEQ asserted its mootness contention for the first time in its jurisdictional plea filed with the district court in November 2018. *See id.*; *AC Interests, L.P. v. Tex. Comm'n on Envtl. Quality*, 521 S.W.3d 58 (Tex. App.—Houston [1st Dist.] 2016), *rev'd by* 543 S.W.3d at 707–15.

## Standard of Review

The district court's subject matter jurisdiction may be challenged through a plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2004). Whether subject matter jurisdiction exists is a question of law we review de novo. *See Miranda*, 133 S.W.3d at 226; *see also Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019). We look first to the pleadings to determine if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *See Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally in favor of the plaintiff, looking to its intent, and accept as true the factual allegations in the pleadings. *Id.* We also consider any evidence introduced by the plaintiff that is relevant to the jurisdictional inquiry. *See City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010). If the issue is one of pleading sufficiency, the plaintiff should be afforded the opportunity to amend unless the pleadings affirmatively negate jurisdiction. *Miranda*, 133 S.W.3d at 226–27.

## Mootness Doctrine

The Texas Clean Air Act permits a person adversely affected by a TCEQ ruling to appeal, as AC Interests did here, by filing a petition in a district court in Travis County within 30 days of the ruling. TEX. HEALTH & SAFETY CODE § 382.032(a). The primary question before us, which we consider de novo, is

whether AC Interests's appeal of the TCEQ's refusal to certify ERCs has become moot because the lifespan of the resulting litigation has exceeded the lifespan of any ERC that AC Interests may have generated by its facility shutdown. *See Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002) (existence of subject matter jurisdiction is legal question reviewed de novo); *see also Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227, 229 (Tex. 1993) (mootness doctrine implicates subject matter jurisdiction).

Courts are limited by the mootness doctrine to deciding cases in which an actual controversy exists. *See, e.g.*, *State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018). An actual controversy must exist between the parties at every stage of the legal proceedings. *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). Mootness may occur at any time, including on appeal. *See Heckman v. Williamson Cty.*, 369 S.W.3d 162, 166–67 (Tex. 2012) ("[C]ourts have an obligation to take into account intervening events that may render a lawsuit moot.").

Mootness occurs if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome. *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005). The same is true when a judgment would not have any practical effect upon a then-existing controversy. *See Best*, 562 S.W.3d at 6 (case is moot when events make it impossible for court to grant relief requested or otherwise affect parties' rights or interests); *see also Heckman*, 369 S.W.3d at 162 (same); *City of*

*Hous. v. Kallinen*, 516 S.W.3d 617, 622 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (same). When a case becomes moot, the court loses jurisdiction and cannot hear the case. *Best*, 562 S.W.3d at 6.

AC Interests timely sought judicial review of the TCEQ's decision to deny certification of ERCs, alleging that the decision violated procedural and substantive due process, was arbitrary and capricious, and exceeded the TCEQ's authority. The foundation of AC Interests's request for relief is its claimed entitlement to ERCs based on the emission reductions achieved by the permanent shutdown of its facility.

The TCEQ derives its argument that the controversy is moot from the rules for emission credit banking and trading codified in the Administrative Code. *See* 30 TEX. ADMIN. CODE §§ 101.300, *et seq.* Specifically, the TCEQ looks to administrative rule 101.309(b), which establishes a 60-month lifespan for emission credits:

> Emission credits certified as part of an administratively complete EC-1 Form, Application for Certification of Emission Credits, received after January 2, 2001 shall be available for use for 60 months from the date of the emission reduction.

30 TEX. ADMIN. CODE § 101.309(b)(3).[17] The TECQ argues that this case became moot 60 months after the "date of the emission reduction" at AC Interests's

---

[17] The version of the rule 101.309 applicable in this case defines the lifespan of an emission credit in subsection (b)(3). *See* Former 30 TEX. ADMIN. CODE § 101.309(b)(3). In the current version of the rule, the lifespan of an emission credit is moved to subsection (b)(2) and amended in a non-substantive way to provide that an "emission credit certified as part of an administratively complete application

9

facility—when the July 2010 fire shut down the facility and emissions ceased as a result or, at the latest, when AC Interests opted not to reconstruct the facility in October 2013 and instead applied for certification of ERCs. *See id.* §§ 101.300(27) (shutdown means "permanent cessation of an activity producing emissions at a facility or mobile source"), 101.303(a)(1)(A) (emission credits may be generated by "permanent shutdown of a facility that causes a loss of capability to produce emissions"). According to the TCEQ, because the facility shutdown occurred more than 60 months ago and any ERCs that AC Interests may have generated have since expired, the courts can no longer grant AC Interests any relief that will have a practical legal effect.

AC Interests argues the district court erred by accepting the TCEQ's mootness argument because any 60-month "emission clock" has not yet expired in this case for two reasons. First, AC Interests contends that the language of rule 101.309(b)(3) prevents the clock from starting before an application for certification of emission credits is "administratively complete," which AC Interests asserts never occurred here because TCEQ denied its applications. According to AC Interests, an

received after January 2, 2001 shall be available for use for 60 months from the date of the emission reduction." Current 30 TEX. ADMIN. CODE § 101.309(b)(2). For the purpose of this opinion, all citations to rule 101.309 are to the former version of rule.

application is "administratively complete" once the TCEQ has reviewed it and declared it so.

Second, AC Interests contends that, even if the clock started running, the lifespan of an emission credit should be tolled based on events that occurred before and during litigation. Specifically, AC Interests asserts that the clock stopped (1) when the TCEQ initially denied the ERCs in December 2013, (2) when the TCEQ finally denied the ERCs in November 2014, (3) when the TCEQ initially moved to dismiss the case due to untimely service in January 2015, and (4) when the trial court erroneously dismissed in the case on that motion in March 2015, forcing an appeal to the Texas Supreme Court. We disagree.

Because the TCEQ is the agency charged with administering the Texas Clean Air Act, the TCEQ's interpretation of rule 101.309 is entitled to deference unless it is "plainly erroneous, or inconsistent with the language of the statute, regulation, or rule." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011). We further construe administrative rules, like statutes, using traditional principles of statutory construction. *Id.*; *Heritage on San Gabriel Homeowners Ass'n v. Tex. Comm'n on Envtl. Quality*, 393 S.W.3d 417, 424–25 (Tex. App.—Austin 2012, pet. denied). Our primary objective is to give effect to the intent of the issuing agency and legislature, "which, when possible, we discern from the plain meaning of the words chosen." *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2004) (addressing

11

statutory construction); *see Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999) (addressing rule construction). The statute or rule must be considered as a whole. *TGS-NOPEC*, 340 S.W.3d at 439. And its meaning may be informed by factors that include the law's objective. *See Shumake*, 199 S.W.3d at 284; *see also* TEX. GOV'T CODE § 311.023(1).

The plain language of rule 101.309(b)(3) does not include any extension of the life of an emission credit under the circumstances urged by AC Interests. *See* 30 TEX. ADMIN. CODE § 131.309(b)(3). While the rule defines the lifespan of emission credits "certified as part of an administratively complete application received after January 2, 2001," nothing in the rule suggests that the life of an emission credit is tolled until an application is deemed administratively complete. *See id.*

Neither does any language actually used in the rule suggest that the life of an emission credit is tolled during the administrative review of an application or in litigation resulting from TCEQ's decision on an application for such credits. The rule unambiguously states: "Emission credits . . . *shall be* available for use for 60 months *from the date of the emission reduction*." 30 TEX. ADMIN. CODE § 101.309(b)(3) (emphasis added). It does not define the life of an emission credit according to when the emission credit is finally certified by the TCEQ, whether as part of the initial administrative proceedings or after judicial review.

12

To hold that the rule incorporates a tolling mechanism would be to read additional language into the rule, which is contrary to the rules of construction and not the role of this Court.[18] *See TGS-NOPEC*, 340 S.W.3d at 439 ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen.").

In addition, a conclusion that rule 101.309 does not include a tolling mechanism is supported by reading the administrative rules for emission credit banking and trading as a whole. *See TGS-NOPEC*, 340 S.W.3d at 439. In rule 101.304, for example, the TCEQ expressly extended the lifespan of certain other emission credits by one year. 30 TEX. ADMIN. CODE § 101.304(e) (certain mobile

---

[18] Although AC Interests did not provide authority for its argument that the lifespan of an emission credit is tolled during the period of any litigation arising from TCEQ's decision on an application to certify emission credits in its initial appellate briefing, at oral argument in this case AC Interests indicated that its contention is premised on the equitable doctrines that toll statutory limitations periods. *See generally Young v. United States*, 535 U.S. 43, 49 (2002) (limitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with text of relevant statute). The authorities on which AC Interest relied at oral argument concern the tolling of limitations when the outcome of an initial case determines the viability of a subsequent cause of action, for example, as in a legal malpractice action. *See, e.g.*, *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 155 (Tex. 1991) (statute of limitations in legal malpractice case is tolled until appeals are exhausted on underlying suit in which malpractice allegedly occurred); *Pollard v. Hancshen*, 315 S.W.3d 636, 638–39 (Tex. App.—Dallas 2010, no pet.) (same). But this is not a case that involves a second or dependent cause of action in which AC Interests's claim depends on an adjudication in another suit. AC Interests timely filed its petition for judicial review within 30 days of the TCEQ's decision. And the litigation-related delays about which AC Interests complains occurred during the course of the proceedings in this single action. The cases that AC Interests provided us at oral argument are thus inapposite.

emission reduction credits "shall be available for use for 72 months from the date of the emission reduction in lieu of the provisions outlined in § 101.309(b)(2) of this title (relating to Emission Credit Banking and Trading")). This suggests that any extension of credit life was intended to apply only in a small subset of the potential population of emission credits—a subset of mobile emission reduction credits not at issue here—for a specified time period. *See id.*; *see also In re Bell*, 91 S.W.3d 784, 790 (Tex. 2002) (courts should presume that words excluded from statute have been excluded purposefully and should not insert words into statute except to give effect to clear legislative intent).

A construction that does not extend the lifespan of an emission credit also is consistent with the purpose of the rules regulating and controlling air pollution and contaminants, which is to aid the implementation of the Texas Clean Air Act, and the Texas Clean Air Act itself, which is to "safeguard the state's air resources from pollution by controlling or abating air pollution and emissions of air contaminants, consistent with the protection of public health, general welfare, and physical property . . . ." *See* TEX. HEALTH & SAFETY CODE § 382.002(a); *see also* 30 TEX. ADMIN. CODE §§ 101.300–.311. The Act provides that its provisions are to be "vigorously enforced." TEX. HEALTH & SAFETY CODE § 382.002(b).

Accordingly, for all these reasons, we conclude that the plain language of rule 101.309 does not include any tolling mechanism that would extend the lifespan of

14

an emission credit beyond "60 months from the date of the emission reduction" for the purpose of this mootness analysis. *See* 30 TEX. ADMIN. CODE § 101.309(b)(3).

There may be a disagreement about the "date of the emission reduction" in this case, but we need not resolve that disagreement in order to determine mootness. Both parties tie the "date of emission reduction" to the shutdown of AC Interests's facility. *See* 30 TEX. ADMIN. CODE § 101.300(27) (defining "shutdown" as "permanent cessation of an activity producing emissions at a facility or mobile source"). Regardless of whether the facility shutdown occurred in July 2010, as the TCEQ asserts, or as late as October 2013, as AC Interests asserts, both dates are more than 60 months in the past.

Neither AC Interests's pleadings in the district court nor its briefing in this Court include any argument or allegation as to the usefulness of ERCs beyond their 60-month lifespan that might preserve the controversy over TCEQ's denial of ERCs. *See generally Kallinen*, 516 S.W.3d at 622 (case is not moot if some issue remains in controversy). Based on the limited record before us, we can discern none.[19] For

---

[19] With a limited exception for the purpose of determining jurisdiction, not invoked here, our review on appeal is limited to the facts in the record. *Cf. Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623–24 (Tex. 2012) (citing TEX. R. EVID. 201 and noting that appellate court may take judicial notice of relevant facts outside record to determine jurisdiction); *Bridgeport Indep. Sch. Dist. v. Williams*, 447 S.W.3d 911, 916 (Tex. App.—Austin 2014, no pet.) (taking notice of letter not in appellate record as it was undisputed and impacted court's jurisdiction). In this case, the appellate record includes only select pleadings and documents from the district court's file and the record of the previous service-related appeal. Although AC Interests's briefing includes citations to the administrative proceedings before

15

example, subpart (e) of rule 101.309 suggests a permissible use of expired emissions credits—"[r]eductions certified as emissions credits may still be used by the original owner as an emission reduction for netting purposes after the emission credits have expired, as provided in § 116.150 of this title (relating to New Major Source or Major Modification in Ozone Nonattainment Areas)." 30 TEX. ADMIN. CODE § 101.309(e). There are no netting allegations in either AC Interests's pleadings or briefing. AC Interests's only allegation as to the continued usefulness of the expired emission credits concerns whether the litigation-related delay will diminish their value in the "emission credit market." But that allegation ignores that emission credits are transferrable at "any time *before the expiration date* of the emission credit[.]" 30 TEX. ADMIN. CODE § 101.309(d) (emphasis added).

Absent any basis for concluding either that the emission credits AC Interests may have generated have not expired or have some usefulness despite their expiration, we hold that AC Interests's request for judicial review of the TCEQ's denial of its applications for certification of ERCs is moot. [20] *Cf. Tex. Comm'n on*

TCEQ and it appears that the administrative record was transmitted to the district court, the administrative record itself was not designated for inclusion in the appellate record or transmitted to this Court. The only part of the administrative record before us is TCEQ's decision letters, which were attached as exhibits to AC Interests's response to the plea to the jurisdiction.

[20] Although there is not a prior Texas case that directly addresses whether a claim involving emission credits becomes moot upon the credits' expiration, more than one federal case recognizes that claims involving permits issued by the Environmental Protection Agency can become moot during litigation upon the

*Envtl. Quality v. Gonzales*, No. 03-18-00803-CV, 2019 WL 5582236, at \*1–2 (Tex. App.—Austin Oct. 30, 2019, no pet.) (mem. op.) (dispute over air quality permit became moot upon expiration of permit); *City of Shoreacres v. Tex. Comm'n on Envtl. Quality*, 166 S.W.3d 825, 831 (Tex. App.—Austin 2005, no pet.) (dispute over validity of permit became moot when requested relief would no longer have any practical legal effect).

In that regard, AC Interests has not asserted or established, in either this Court or the district court, that any exception to the mootness doctrine preserves its cause,[21] and AC Interests reconfirmed that position during oral argument. *See, e.g.*, *Gen. Land Office of Tex. v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex. 1990)

expiration of the subject permit. *See, e.g.*, *DJL Farm LLC v. U.S. Envtl. Prot. Agency*, 813 F.3d 1048, 1051 (7th Cir. 2016) (agreeing with agency and company that landowners' action challenging permits issued for construction and operation of carbon dioxide was moot because challenged permits expired and, thus, court could not award meaningful relief); *Madison v. Tulalip Tribes of Wa.*, 163 Fed. Appx. 499 (9th Cir. 2006) (appeal challenging expired permit governing storm water discharge was moot). We find these cases to be persuasive for the purpose of our mootness inquiry.

[21] *See, e.g.*, *Ackels v. United States Envtl. Prot. Agency*, 7 F.3d 862, 868 (9th Cir. 1993) (challenge to requirements of discharge permits became moot when permits expired and permit requirements were not likely to be reimposed so as to invoke exception to mootness doctrine); *Humane Soc'y of United States v. Envtl. Prot. Agency*, 790 F.2d 106, 113 (D.C. Cir. 1985) (fact that experimental use permits expired before case reached oral argument did not render moot petition for review because permits' one-year life span did not allow completion of review before expiration and there was reasonable expectation that future permits would be challenged by petitioner); *Montgomery Envtl. Coal. v. Costle*, 646 F.2d 568, 578–80 (D.C. Cir. 1980) (portion of appeal challenging expired permits issued to sewage treatment plants was moot when decision would be mere academic exercise but not moot as to portion of appeal involving recurring issues).

(identifying limited exceptions to mootness doctrine for controversies that (1) are capable of repetition yet evading review or (2) involve collateral consequences); *Williams*, 52 S.W.3d at 184 (to invoke "capable of repetition, yet evading review" exception to mootness doctrine, "a *plaintiff must prove* that . . .") (emphasis added). Moreover, there are no allegations in AC Interests's pleadings that suggest to us the applicability of any exception to the mootness doctrine. This jurisdictional defect is not one of pleading sufficiency that can be cured by repleading. *See Miranda*, 133 S.W.3d at 227.

## Conclusion

Accordingly, having concluded that AC Interests's request for judicial review is moot, based on the record and arguments presented to us, we hold the trial court did not err by granting the TCEQ's plea to the jurisdiction.[22]

We affirm the trial court's judgment.

Terry Adams
Justice

Panel consists of Justices Goodman, Landau, and Adams.

---

[22] Our conclusion on mootness precludes us from considering AC Interests' other issues challenging the constitutionality of rule 103.309 and asserting a right to a jury trial. *See Williams*, 52 S.W.3d at 184 (court loses jurisdiction when case becomes moot). Accordingly, we do not reach those issues.